**In the Matter of Teddy I. MOORE 160–05 Horace Harding Expressway Flushing, N.Y. 11365, Respondent.**

**No. M–2–238.**

United States District Court, S.D. New York.

Nov. 8, 2001.

---

## OPINION AND ORDER

RAKOFF, District Judge.

Respondent Teddy I. Moore, a member of the bar of this Court, was disbarred by the Supreme Court of the United States by Order dated May 22, 2000. *See In the Matter of Disbarment of Teddy I. Moore,* 529 U.S. 1127, 120 S.Ct. 2028, 146 L.Ed.2d 979 (2000). This Court, in keeping with its rules and practices when a member of our bar is disciplined by some other court, thereupon issued an Order dated December 14, 2000, directing Mr. Moore to show cause why this Court, acting through its duly appointed Committee on Grievances (the "Committee"), should not impose discipline reciprocal to that of the Supreme Court. *See* Local Rule 1.5(d)(1) of the Local Rules of the Southern District of New York. Having received a submission from respondent and considered it carefully, the Committee concluded that the underlying facts, discussed *infra*, might also implicate an issue of respondent's fitness to represent clients in this Court. Accordingly, a second Order issued on July 20, 2001, directing Mr. Moore to show cause why this Court should not impose discipline on the ground that his submissions to the Supreme Court demonstrate his unfitness to represent clients in this Court. Mr. Moore responded to that Order, as well. Finally, the Committee, having been made aware that the United States District Court for the Eastern District of New York was also considering discipline against Mr. Moore and had designated Lawrence J. Zweifach, Esq., to investigate the allegations against him, obtained and considered the Report and Recommendation made by Mr. Zweifach to that Court and Mr. Moore's response thereto.

The Order of the Supreme Court disbarring Mr. Moore did not state on its face the reasons for his disbarment. Similarly, while four Justices dissented from that Order, they gave no reasons for their dissent. The history of the matter in the Supreme Court shows, however, that the disbarment traces back to certiorari petitions filed by Mr. Moore in the Supreme Court seeking review of two decisions of the United States Court of Appeals for the Second Circuit. In one decision, *Spencer v. New York City Transit Authority,* Dkt. No. 99–1197 (pet. for cert. filed Jan. 5, 2000), the Court of Appeals had affirmed a grant of summary judgment for the defendant in a suit alleging that the Transit Authority selectively enforced its random drug-testing policy. In the other decision, *Brown v. New York City Police Department,* Dkt. No. 99–1352 (pet. for cert. filed Feb. 10, 2000), the Court of Appeals had affirmed a judgment dismissing as time-barred an action alleging that a former police officer had been discriminated against on the basis of race and sex.

The petitions Mr. Moore filed with the Supreme Court did not, however, address the merits of either action. Instead, Mr. Moore represented in his petitions that the Questions Presented in both cases that warranted review by the Supreme Court were (in the exact words and punctuation appearing in Mr. Moore's petitions):

1. Whether "COSS"[1] can be declared a corrupt enterprise under "Rico."[2]

2. Whether, Chief Injustice, Mr. Ralph Winter can be brought to trial for racketeering, under "Rico" 18. U.S.C.1961–1968.

3. Whether there is a better resolution for the people than to shut down "COSS."

The petitions then went on, in conclusory language, to accuse the Court of Appeals, of having a "corrupt nature," of being "a strong supporter of fraud and recketeers [*sic*]," and of constituting "a cancer in the legal system," concluding that "no terrorist, criminal, individual or otherwise caused greater harm and miscarriage of justice to the people than this den of racketeers . . . ." Similar accusations were made against "chief injustice Ralph Winter" and his fellow "injustices."

Upon receipt of these petitions, the Supreme Court temporarily suspended Mr. Moore from practicing law before the Court for 40 days and ordered Mr. Moore to show cause why he should not be disbarred "for engaging in conduct unbecoming a member of the Bar of this Court, to wit, filing papers containing gratuitous invective directed against the United States Court of Appeals for the Second Circuit, entirely unnecessary to the statement of asserted facts." In his response, Mr. Moore professed not to understand what portions of the petitions constituted "gratuitous invective." Referring to his suspension as an "execution," he complained that it had been entered without due process of law, and asked "Why shoot the messenger when his message is correct and was for good cause?" Rather than explain the relevance of his allegations to the cases in question, Mr. Moore merely repeated them:

I have not heard of any terrorist or racketeer in the U.S. who caused damage and injustice to the people that can be measured by thousands of cases, and thus the miscarriage of justice by COSS is worse than any than I know.

After considering these submissions, the Supreme Court entered its Order disbarring Mr. Moore.

*Discussion*

The Rules of this Court provide that the Committee on Grievances, consisting of seven judges appointed by the Chief Judge, may impose discipline, including disbarment, on any member of its bar who has been "disciplined by any federal court or by a court of any state or territory." Local Rule 1.5(b)(2); *see also* Local Rule 1.5(c)(1). In such cases, "discipline may be imposed unless the attorney establishes by clear and convincing evidence" (i) that the proof before the other court was so infirm that this Court could not "consistent with its duty" accept the finding of the other court; (ii) that the procedure used in the other court was "so lacking in notice or opportunity to be heard as to constitute a deprivation of due process"; or (iii) that the imposition of discipline by this Court would result in "grave injustice." Local Rule 1.5(d)(2).

Mr. Moore's submissions to the Committee do not remotely meet any of these three requirements. As to the first, the evidence on which the Supreme Court relied, far from being infirm, consisted of petitions and other documents authored and submitted by respondent, none of which he disavowed. As to the second,

---

1. "COSS" was Mr. Moore's obscure acronym for the Court of Appeals of the Second Circuit.

2. The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.*

Mr. Moore was accorded notice and heard on the merits before discipline was imposed. As to the third, Mr. Moore's instant submissions to this Court, far from seeking to justify or mitigate his misconduct before the Supreme Court, repeat the patently defamatory statements that led to his disbarment by the Supreme Court.

■ Nonetheless, the Committee has *sua sponte* considered whether reciprocal disbarment here would work a "grave injustice" either because Mr. Moore's invectives, however extreme in nature, might be regarded as an expression of criticism of public officials protected by the First Amendment (this presumably being the basis of the four Justices' dissent) [3] and/or because disbarment by this Court might constitute a disproportionate punishment compared to disbarment from the more specialized practice before the Supreme Court. In this case, however, we are fully satisfied not only that disbarment of Mr. Moore is not a grave injustice, but also that such action is necessary to protect this Court's legal process: for upon review Mr. Moore's actions demonstrate his incompetence to practice law on behalf of his clients.

Mr. Moore's unsupported and contemptuous attack on the integrity of the Court of Appeals that constitutes the sole ground of his petitions for certiorari cannot possibly have advanced the cause of his clients, and indeed could only have harmed them by directing the Supreme Court away from whatever merit the clients' cases might have had. Indeed, as noted, the two petitions completely ignore any legal and factual issues presented by the *Spencer* and *Brown* litigations. Aside from the unsup-

ported accusations of corruption on the part of the Court of Appeals and its judges, the petitions consist solely of a rendition of Mr. Moore's dissatisfaction with Second Circuit decisions in other matters, which he decries as examples of the alleged corruptions of the Court of Appeals, its members, and, indeed, its entire staff. By indulging in vituperative invective and ranting about his own grievances against the Court of Appeals, rather than making any coherent legal argument about the merits of his clients' cases, Mr. Moore betrayed his clients' trust and failed to represent them competently.

Such conduct violates a number of disciplinary rules and ethical injunctions binding on the legal profession. NYCPR DR 7–101(A)(3) enjoins that a lawyer shall not intentionally "prejudice or damage his client during the course of the professional relationship;" DR 6–101 prohibits "failing to act competently;" and DR 6–101(A)(3) provides that a lawyer shall not "neglect a legal matter entrusted to him." Overall, Mr. Moore's conduct does not merely "adversely reflect[ ] on his fitness to practice law," DR 1–102(A)(6), but shows that he is unfit to represent clients before this Court.

Mr. Moore's various responses to this Court's orders to show cause and to Mr. Zweifach's Report and Recommendation to the Eastern District only further persuade us of his incompetence to practice law. His responses disingenuously claim that the record does not reveal which certiorari petitions the Supreme Court was referring to, incorrectly argue that the Supreme Court's disbarment order is not a "disciplinary action," and incoherently in-

---

3. *But see* NYCPR DR 8–102(B): "A lawyer shall not knowingly make false accusations against a judge or other adjudicatory officer." It may also be noted that judges, unlike most other public figures, are substantially limited by law and judicial ethics in the public responses they may make to criticism and accusations.

voke "the progress of DNA testing" in support of his claim that a "victim for no reason and without any due process has unfortunately become routine." The only approach to an understandable legal argument is his reliance on the First Amendment. But as the Supreme Court made clear in stating that the invectives of which Moore's petitions consisted were wholly "gratuitous," Mr. Moore is not being disciplined for criticizing the courts, but for incompetently representing his clients.

■ For all these reasons, and after a careful review of the facts underlying the discipline imposed by the Supreme Court of the United States and of Mr. Moore's responses to the charges, the Committee of Grievances of this Court unanimously concludes that Mr. Moore is unfit to represent clients before this Court, that the discipline imposed by the Supreme Court fully justifies invocation of Local Rule 1.5(b)(2), and that imposing discipline here is fully in accord with the standards set forth in Local Rule 1.5(d)(2).

Accordingly, the Clerk of this Court is directed to remove the name of Teddy I. Moore from the roll of practicing attorneys of this Court.

SO ORDERED: